This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.                                                    **NO.  32,497**

**SABINO JAQUES,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF DOÑA ANA COUNTY**
**Fernando R. Macias, District Judge**

Gary K. King, Attorney General
Becca Salwin, Assistant Attorney General
Santa Fe, NM

for Appellee


Jorge A. Alvarado, Chief Public Defender
Kathleen T. Baldridge, Assistant Appellate Defender
Nina Lalevic, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**MEMORANDUM OPINION**

**KENNEDY, Chief Judge.**

{1}     Sabino Jaques (Defendant) appeals from the district court's judgment and sentence entered pursuant to a jury trial, convicting him for misdemeanor battery against a household member and aggravated battery against a household member with a deadly weapon. Defendant raises three issues on appeal. First, Defendant contends that the district court committed fundamental error by failing to include the unlawfulness element in the jury instructions for his battery charges. Second, Defendant argues that the State presented insufficient evidence to support either of his battery convictions. Third and last, Defendant argues that his convictions for misdemeanor and aggravated battery against a household member violate the Double Jeopardy Clause because the convictions subjected him to multiple punishments for the same offense. We are not persuaded by any of Defendant's arguments and affirm.

**I.     DISCUSSION**

**A.     Missing Unlawfulness Element in Jury Instructions is not Fundamental Error**

{2}     Conceding that he failed to object below, Defendant contends that it was fundamental error to omit the element of unlawfulness from the jury instructions where the self-defense instruction was given. We agree with Defendant that his objection to the missing unlawfulness element was not preserved below and that he,

2

therefore, must establish fundamental error. *See State v. Barber*, 2004-NMSC-019, ¶ 20, 135 N.M. 621, 92 P.3d 633; *State v. Cunningham*, 2000-NMSC-009, ¶ 11, 128 N.M. 711, 998 P.2d 176. We also agree that our Supreme Court in *State v. Sosa* held that "where a defendant raises the defense of self-defense, unlawfulness becomes a necessary element of the crime charged." 1997-NMSC-032, ¶ 26, 123 N.M. 564, 943 P.2d 1017 (explaining that "[o]nce the defendant claims that the conduct in question was lawful, the prosecution must prove unlawfulness beyond a reasonable doubt"). However, we observe that, even where an element is omitted from the instructions, the error will not be fundamental where "the jury could not have reached its verdict without also finding the element omitted from the instructions." *Barber*, 2004-NMSC-019, ¶ 29. "Our task is to determine whether a reasonable juror would have been confused or misdirected by the jury instruction." *Cunningham*, 2000-NMSC-009, ¶ 14 (internal quotation marks and citation omitted).

{3}     In the present case, the jury instructions for the battery charges did not explain that the jury had to find that Defendant's actions were unlawful in order to convict him of the batteries and reject his self-defense claim. Nevertheless, the jury was properly instructed on Defendant's theory of self-defense. *See* UJI 14-5181 NMRA. The jury instruction states that "[t]he burden is on the state to prove beyond a reasonable doubt that the defendant did not act in self[-]defense. If you have a reasonable doubt as to whether the defendant acted in self[-]defense, you must find

3

the defendant not guilty." In *Cunningham*, our Supreme Court held that identical language properly instructed the jury on self-defense and prevented confusion in a reasonable juror. 2000-NMSC-009, ¶ 14. Like our Supreme Court in *Cunningham*, we hold that, despite the omission of unlawfulness among the elements in the charged offenses, the separate self-defense instruction properly instructed the jury and required it to consider whether the State proved that Defendant's actions were done in self-defense or were unlawful beyond a reasonable doubt. *See id.* ¶ 15; *Barber*, 2004-NMSC-019, ¶ 29. Accordingly, consistent with our case law, we reject Defendant's claim of fundamental error.

**B.      Sufficient Evidence Was Presented to Support Defendant's Convictions**

{4}      "The test for sufficiency of the evidence is whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilty beyond a reasonable doubt with respect to every element essential to a conviction." *State v. Riley*, 2010-NMSC-005, ¶ 12, 147 N.M. 557, 226 P.3d 656 (internal quotation marks and citation omitted), *overruled on other grounds by State v. Montoya*, 2013-NMSC-020, ¶ 2, 306 P.3d 426. The reviewing court "view[s] the evidence in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict." *Cunningham*, 2000-NMSC-009, ¶ 26. The question for us on appeal is whether the trial court's "decision is supported by substantial evidence, not whether the [trial] court could have reached a different

4

conclusion." *In re Ernesto M., Jr.*, 1996-NMCA-039, ¶ 15, 121 N.M. 562, 915 P.2d 318. We emphasize that we do not consider the merit of evidence that may have supported a different result. *See State v. Kersey*, 1995-NMSC-054, ¶ 11, 120 N.M. 517, 903 P.2d 828. Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion[.]" *State v. Salgado*, 1999-NMSC-008, ¶ 25, 126 N.M. 691, 974 P.2d 661 (internal quotation marks and citation omitted).

{5}     Defendant's brief-in-chief sets forth the applicable jury instructions against which the evidence is measured and the testimony from Victim that supports Defendant's convictions for misdemeanor and aggravated battery of a household member. *See State v. Castillo*, 2011-NMCA-046, ¶ 24, 149 N.M. 536, 252 P.3d 760 ("We measure the sufficiency of the evidence against the jury instructions."). We see no need to restate that information here. Defendant contends that the evidence is insufficient because his testimony disputed Victim's account of events. "As an appellate court, however, we are not in a position to judge the credibility or weight of [the d]efendant's testimony. If it were otherwise, we would become in effect a second jury to determine whether the defendant is guilty." *State v. Johnson*, 2004-NMSC-029, ¶ 43, 136 N.M. 348, 98 P.3d 998 (internal quotation marks and citation omitted). Instead, resolving inconsistencies in the testimony, weighing the evidence, and making credibility determinations are for the jury. *See State v.*

*Marquez*, 2009-NMSC-055, ¶ 17, 147 N.M. 386, 223 P.3d 931 (explaining that "it is well established that [c]ontrary evidence supporting acquittal does not provide a basis for reversal because the jury is free to reject [the d]efendant's version of the facts" (first alteration in original) (internal quotation marks and citations omitted)), *overruled on other grounds by State v. Tollardo*, 2012-NMSC-008, 275 P.3d 110.

{6}    Mindful of these considerations and viewing the evidence in the light most favorable to the verdict, we hold that the evidence was sufficient to support his convictions for misdemeanor and aggravated battery of a household member because it showed that Defendant beat Victim, his girlfriend, with whom he lived at the time, on her face with his fists and on her head with a large, heavy flashlight. *See State v. Bennett*, 2003-NMCA-147, ¶¶ 2, 18-20, 134 N.M. 705, 82 P.3d 72 (rejecting the defendant's argument that the victim, his live-in girlfriend, was drunk during the incident and thus not credible, and affirming the defendant's conviction for battery and aggravated battery against a household member based on the victim's testimony that the defendant hit her on the head with a telephone and a glass bottle). We affirm Defendant's convictions on these grounds.

## C.    Defendant's Convictions do not Violate Double Jeopardy Protections

{7}    Defendant contends that his convictions for misdemeanor and aggravated battery against a household member violate the constitutional protections against double jeopardy because they subjected him to multiple punishments for the same

6

offense. The parties dispute whether this double jeopardy, multiple punishment case is properly characterized as a double-description case or a unit-of-prosecution case. Because Defendant's conduct resulted "in multiple convictions under different statutes[,]" rather than "multiple convictions under the same statute[,]" we agree with Defendant that this is a double-description case. *State v. Swick*, 2012-NMSC-018, ¶ 10, 279 P.3d 747. Regardless, Defendant's double jeopardy challenge turns on whether his conduct underlying both offenses is unitary, which requires us to conduct "a substantially similar analysis" under the double-description and unit-of-prosecution inquiries. *State v. Bernal*, 2006-NMSC-050, ¶ 16, 140 N.M. 644, 146 P.3d 289 (noting that double-description cases have adopted *Herron v. State*, 1991-NMSC-012, 111 N.M. 357, 805 P.2d 624, factors from the unit-of-prosecution cases for purposes of determining whether a defendant's conduct was unitary). "In each case, we attempt to determine, based upon the specific facts of each case, whether a defendant's activity is better characterized as one unitary act, or multiple, distinct acts, consistent with legislative intent." *Bernal*, 2006-NMSC-050, ¶ 16.

{8}     Our courts have recognized that the factual permutations of each case preclude the usefulness of a "mechanical formula" in determining whether a defendant's conduct is unitary. *Id.* Instead, we apply general principles to assist our analysis of whether the defendant's acts are separated by a "sufficient indicia of distinctness." *State v. DeGraff*, 2006-NMSC-011, ¶ 27, 139 N.M. 211, 131 P.3d 61 (internal

quotation marks and citation omitted); *see Bernal*, 2006-NMSC-050, ¶ 16 (stating that "[the Supreme] Court sought instead to provide 'general principles' to aid in the [unitary conduct] analysis"). "[I]n general terms, [t]ime and space considerations would help to determine distinctness. If time and space considerations cannot resolve the case, then a court may look at the quality and nature of the acts, or the objects and results involved." *Id.* ¶ 16 (second alteration in original) (internal quotation marks and citations omitted). "In our consideration of whether conduct is unitary, we have looked for an identifiable point at which one of the charged crimes had been completed and the other not yet committed." *DeGraff*, 2006-NMSC-011, ¶ 27. "We have also looked for an event that intervened between the initial use of force and the acts that caused death." *Id.*

{9}     In the present case, the testimony of Victim about the incident is not particularly detailed or linear about the sequence of events. Viewing all the evidence, however, we can extrapolate from Victim's testimony and discern distinct acts by Defendant that separately complete the charged crimes of battery and aggravated battery against a household member.

{10}     Victim's testimony indicates that Defendant was shoving and beating her with his fists in the kitchen of her apartment while she was trying to defend herself and leave the apartment to get away from him. The State's photographic evidence shows that Victim suffered at least one laceration on her face, had a large tear in the front of

8

her shirt, and appeared bloody and beaten. Detective Jose Higareda testified that the injuries he observed on Victim's face were consistent with being punched.

{11} Victim's testimony indicates that she was able to get away from Defendant and go outside. While they were outside, Defendant began beating Victim on the back right side of her head with a large, heavy flashlight while she was knocked down and lying on the ground. The photographic evidence and the testimony from Victim and Detective Higareda indicate that she was badly beaten from the flashlight and suffered a large, painful laceration to her head that bled substantially. Victim testified that her neighbors called the police and pulled Defendant away from her. Marc Wood, the neighbor who called 911, saw the end of the incident as it occurred outside and testified that he saw Victim lying on the ground with blood all over her. Defendant was standing over her, and Wood's brother was pushing Defendant off of her. Detective Higareda's testimony indicated that his investigation and his observation of Victim and the bloody scene were consistent with her testimony of how, with what objects, and where Defendant had beaten her.

{12} We are persuaded that Defendant's initial use of force against Victim and shoving and punching her in the face while in the kitchen completed the crime of battery against a household member. *See id.* ¶ 30 ("While the initial use of force completed the crime of aggravated burglary, the evidence shows that the death was not caused by this initial attack alone."). Although Victim's testimony does not

specifically describe the time and space attributes surrounding her struggle to defend herself against Defendant, she explained that she was able to free herself from Defendant and go outside of the apartment. We agree with the State that Victim's success in breaking free from Defendant was an intervening event. *See id.* (stating the facts that the defendant used different weapons, and the evidence showed an intervening struggle during which the victim defended himself, showed that the underlying conduct supporting aggravated burglary and felony murder were not unitary); *State v. Cooper*, 1997-NMSC-058, ¶¶ 60-62, 124 N.M. 277, 949 P.2d 660 (holding that where different deadly weapons were used against the victim, and the victim struggled after the first attack, the struggle was an intervening event that separated the acts of force constituting aggravated battery from the acts of force that caused the victim's death and constituted murder). This intervening event constituted an identifiable point that separated Defendant's act of punching and shoving Victim from his subsequent act of beating her in the back of the head with the flashlight. *See DeGraff*, 2006-NMSC-011, ¶ 27 (explaining that conduct may be non-unitary if there is an "identifiable point at which one of the charged crimes had been completed and the other not yet committed"). Also supporting our conclusion, the latter attack on Victim with the flashlight constituted a qualitatively different use of force with a heavy, deadly object that knocked her on the ground and caused her substantially more harm than did the force Defendant used in the previous attack. *See id.* ¶ 30;

10

*Cooper*, 1997-NMSC-058, ¶¶ 60-62; *see also Bernal*, 2006-NMSC-050, ¶ 16 (explaining that, in addition to time and space considerations, "a court may look at the quality and nature of the acts, or the objects and results involved" (internal quotation marks and citation omitted)).

{13} We are not persuaded by Defendant's reliance on *State v. Garcia*, 2009-NMCA-107, ¶¶ 13-15, 147 N.M. 150, 217 P.3d 1048, or *State v. Mares*, 1991-NMCA-052, ¶¶ 2-4, 26-27, 112 N.M. 193, 812 P.2d 1341. *Garcia* involved a fight between two inmates in the same cell, and this Court did not perceive sufficient distinctness in the defendant's acts of force, which all occurred close in time, sequence, and space and did not involve any intervening event or weapons. 2009-NMCA-107, ¶¶ 2-4, 13-15. In *Mares*, this Court perceived no distinct break in the battery upon the victim and no qualitative difference between the defendant's acts of force. 1991-NMCA-052, ¶¶ 2-4, 26-27.

{14} Because we hold that Defendant's conduct underlying his convictions for misdemeanor and aggravated battery against a household member was not unitary, we need not proceed further with the double jeopardy inquiry into legislative intent. *See DeGraff*, 2006-NMSC-011, ¶ 31. Based on the above analysis, we reject Defendant's double jeopardy challenge.

**II.    CONCLUSION**

{15} For the reasons stated in this Opinion, we affirm Defendant's convictions for misdemeanor battery against a household member and aggravated battery against a household member.

{16} **IT IS SO ORDERED.**

_____
**RODERICK T. KENNEDY, Chief Judge**

**WE CONCUR:**

_____
**CYNTHIA A. FRY, Judge**

_____
**MICHAEL E. VIGIL, Judge**

12